**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**COLUMBIA DIVISION**

| | |
|---|---|
| CHARLESTON ALLEN, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:10-01633-MBS-JRM |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| APPLE-J L.P., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff, Charleston Allen ("Allen"), filed this case on June 24, 2010. He alleges that his former employer, Apple-J, L.P. ("Apple-J"), terminated him because of his race (African-American) and his gender (male), in violation of Title VII of the Civil Rights Act of 1964. Apple-J filed a motion for summary judgment on April 18, 2011. Allen filed a memorandum in opposition to the motion for summary judgment on May 5, 2011. Apple-J filed a reply memorandum on May 16, 2011.

**Standard for Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). A fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. Anderson, 477 U.S. 242 at 248. "Genuineness means that the evidence must create fair doubt; wholly speculative

assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

The defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id.* at 718-19 (citing Anderson, 477 U.S. at 247-48).

"[O]nce the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (1) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (2) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c) (1)(A-B).

Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Servs. Co., 80 F.3d 954 (4th Cir. 1996). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting

materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e)(1-4).

### **Facts**

The facts, either undisputed, or according to the Plaintiff as the non-moving party, with all reasonable inferences therefrom, to the extent supported by the record, are as follows:

1. Allen is an African-American male.

2. Apple-J is a franchisee of Applebee's Neighborhood Bar and Grill restaurant chain. It operates a number of stores in South Carolina (and other states) including several in the Columbia area.

3. Allen was hired by Apple-J in 2001 and progressed through several management positions, eventually becoming the General Manager of the Applebee's on O'Neil Court in Columbia in December of 2007.

4. Apple-J maintains written policies pertaining to employee conduct in the work place, including sexual harassment and non-fraternization. Allen received copies of these policies as well as training as to their application. (Def.Mem., Exs. E and F).

5. This case involves issues which arose in 2009 while Allen was General Manager of the Applebee's on O'Neil Court. At relevant times, David Peterson ("Peterson") was an Area Director and Allen's immediate supervisor. Tom Moses ("Moses") was the Regional Director and Peterson's supervisor. Roger Thornton ("Thornton") served as Apple-J's Director of Human Resources.

6. Daniel Farra ("Farra"), a white male, became the Kitchen Manager at the O'Neil Court restaurant in early 2009.

7. On March 25, Moses received a report from Renee Tucker ("Tucker"), the Assistant Manager of the O'Neil Court restaurant, that female hostesses at the restaurant had complained about possible sexual harassment by Allen. Moses directed Peterson to investigate.

8. Apple-J awarded a bowling party to the employees of the O'Neil Court restaurant ("the bowling party"). The bowling party was held on March 29. Allegations of sexual misconduct against Allen involving a hostess at the restaurant, Sara Barnes ("Barnes"), later came to light.

9. On or about April 3, Peterson talked with employees, including Jackie Blackstone ("Blackstone") and Ashley Robinson ("Robinson") about Allen's conduct. Blackstone reported that Allen had made statements that made her uncomfortable. Robinson stated that at the bowling party Allen struck her on the buttocks so hard that her cell phone fell to the floor. Other employees were interviewed, but did not know of any sexual harassment.

10. By letters dated April 7, an attorney notified Apple-J that he represented Tucker and that she was filing charges of discrimination with the Equal Employment Opportunity Commission asserting sexual harassment by Allen. (Def.Mem., Ex. O).

11. On April 9 and 10, Moses and Peterson returned to O'Neil Court and renewed the investigation of Allen prompted by receipt of the letter from the attorney for Tucker. They spoke with numerous employees who related Allen's interactions with female employees. (Def.Mem., Exs. Q-T).

12. During these conversations a server, Tressa Damerson, told Peterson of a rumor at O'Neil Court that after the bowling party on March 29, Allen had sex with a server who could not recall the events because she was drunk. The rumor was investigated. Barnes was identified and interviewed. The Assistant Manager, Donny Hughley ("Hughley"), stated that he took Barnes straight home after the party. Peterson found that "no conclusions can be reached" about the incident. (Def.Mem., Ex. U).

13. On April 10,[1] Peterson and Moses met with Allen and advised him of the allegations and investigation. Allen denied the allegations. Moses and Peterson reviewed the sexual harassment policy with Allen and advised him that a violation of the policy would result in termination. They also advised him not to retaliate against employees for talking to them or to talk to employees about the investigation.

14. On April 13, the attorney for Tucker, who now represented Blackstone, sent Apple-J's counsel a series of emails advising:

   a. Allen had spoken with employees to try to obtain information about the investigation;

   b. The schedules of Blackstone and Robinson had been changed so that they worked at the same time as Allen;

   c. An employee, Emerial Libby, was given preferential treatment because she was involved with Allen;

---

[1]This date is in dispute. Apple-J's records show that Allen was counseled on April 7. (Def.Mem., Ex. N). Allen states that Apple-J's exhibit was backdated and the meeting took place on April 10.

5

      d.      There had been a sexual encounter between Allen and Barnes after the bowling party; and

      e.      Robinson's concern that Farra may question her about the investigation. (Def.Mem., Ex. V).

15. Thornton and Moses resumed their investigation on April 14. The rumor about Allen and Barnes resurfaced. (Def.Mem., Ex. W).

16. On April 16, Moses and Thornton interviewed Barnes and Hughley. Barnes' memory of what happened after the bowling party was sketchy, but she remembered going to Hughley's residence, seeing Allen there, and Hughley driving her home. The next day at work, Hughley asked her if Allen had used a condom. When Barnes did not recall, Hughley told her that she had sexual intercourse with Allen after the bowling party. (Def.Mem., Ex. 2). Hughley denied taking her to his house and stated that he took Barnes directly home without seeing Allen. (Def.Mem., Ex. BB).

17. On April 17, Moses and Thornton met with Allen. He again denied all allegations. Allen was informed that he was being transferred to the Broad River Road restaurant. He was admonished not to contact any of the O'Neil Court employees. Allen was counseled and told that the investigation would continue and he could be terminated if it was determined that he had violated any Apple-J policy. (Def.Mem., Ex. CC).

18. Also on April 17, Moses and Peterson met with Hughley and told him he was being transferred to the West Columbia restaurant. (Hughley Dep., p. 84).

19. By email dated April 27, counsel for Tucker, Blackstone, and Robinson notified counsel for Apple-J that he now represented Barnes. Counsel asserted that Allen had

> sex with Barnes while she was unable to consent and that administrative charges of discrimination for his four clients would be filed shortly. (Def.Mem., Ex. DD).

20. On April 28, Moses met with Hughley and obtained a statement implicating Allen in the incident with Barnes.[2]

21. Moses met with Allen on April 28, and told him he was suspended until further notice. He was terminated shortly thereafter.

22. According to Allen, Apple-J reached monetary settlements with Barnes, Tucker, Blackstone, and Robinson. (Pl.Mem., p. 12).

23. Farra replaced Allen as General Manager at the O'Neil Court Applebees. (Moses Dep., p. 70).

## **Discussion**

Allen alleges that he was terminated because of his race and gender. Apple-J argues that it is entitled to summary judgment because Allen has produced no direct evidence of discrimination,[3] and he cannot establish a prima facie case of discrimination under the burden shifting tests under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Alternatively, Apple-J argues that even if Allen could establish a prima facie case, it has articulated a legitimate, non-discriminatory reason for terminating Allen which he cannot show was pretextual. Allen argues that he has established a

---

[2]Hughley was later terminated by Apple-J, and according to Apple-J (Def.Reply Mem., p. 14), is represented by the same attorney as Allen. In his deposition testimony, Hughley recanted his earlier statement implicating Allen asserting that Moses had coerced him into making the written statement. (Hughley Dep., pp. 101-103).

[3]Allen has attributed several actions of Farra which he believes were racial in nature: hanging a sports doll by a noose in Allen's office, telling a black kitchen employee to "get on the boat" when Farra replaced Allen as General Manager, referring to black customers as "ghetto ass people," and referring to Allen as a "token." However, there is no evidence that Farra was involved in the decision to terminate Allen.

prima facie case and that the reason offered by Apple-J for his termination is merely a pretext to hide its discriminatory intent. Allen does not argue that he has produced direct evidence of Apple-J's discriminatory intent.[4]

Title VII makes it "an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may proceed under ordinary principles of proof using direct or indirect evidence, or, in the absence of direct proof of a defendant's intent to discriminate, a plaintiff can employ the scheme outlined in McDonnell Douglas v. Green, 411 U.S. 792 (1973) to establish a prima facie case of discrimination by offering proof that:

    (1) he is a member of a protected class;

    (2) he was performing his job in a satisfactory manner;

    (3) he was subjected to an adverse employment action; and

    (4) the alleged adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination.

*See* Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir.2007); White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir.2004); McDonnell Douglas, 411 U.S. at 802. McDonnell Douglas provides that, once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory basis for the challenged employment action.

---

[4] Allen makes reference to the mixed motive method of establishing discrimination. However, he makes no clear assertion that this method applies to his case and offers no argument or analysis with respect to a mixed motive claim. (Pl.Mem., pp. 13-14). Therefore, the undersigned will limit the discussion to the McDonnell Douglas scheme.

8

McDonnell Douglas, 411 U.S. at 802. If the employer provides the required evidence of a nondiscriminatory reason for the action, the plaintiff must then show that the proffered reasons were not the true reasons for the employment action, but were a pretext for discrimination. *Id.* at 804; *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

**1. Racial Discrimination**

Apple-J concedes that Allen is a member of a protected class and that his termination was an adverse employment action. On the other hand, Apple-J argues that Allen has not shown that his job performance was satisfactory or that the termination occurred under circumstances that raise a reasonable inference of discrimination.[5]

a. Job Performance

Inadequate job performance is a legitimate reason for an employer to take an adverse action against an employee. Citing Jones v. Securing Resources for Consumers, Inc., 2010 WL 428966 (M.D.N.C.), Apple-J argues that a breach of employer's policy may result in a conclusion that the employee was not satisfactorily performing his job. Apple-J has provided a copy of its sexual harassment policy which states that an offending employee may be disciplined or terminated for a violation. (Def.Mem., Ex. F). The central issue is whether Allen violated the policy by having sexual intercourse with Barnes. He maintains that he did not. Apple-J asserts that its lengthy and detailed investigation showed that he did.

---

[5]Because Allen was replaced by a white male, Farra, the undersigned finds that Allen has met the fourth prong of the McDonnell Douglas test.

Generally, an employer may rely on the conclusions of an impartial investigation of violation of policy or wrongdoing in making its decisions where the decision maker honestly believes that the employee committed an unacceptable act. Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 444 (4th Cir. 1998). Allen has produced evidence which reflects negatively on the investigation. The allegation relating to Barnes surfaced after the initial investigation had begun. First, Allen has consistently denied the allegation. Second, Barnes' memory of the night was clouded. Hughley also stated that he had taken Barnes directly to her residence from the bowling party, and that he had had no contact with Allen. The initial investigation (after talking with both Allen and Barnes) was inconclusive and Allen was counseled with respect to the sexual harassment policy.

The investigation resumed after the attorney for several employee emailed counsel for Apple-J advising of further instances of sexual harassment on April 13. Included in the allegations was the Allen-Barnes incident. On April 16, Barnes was re-interviewed. Her recollection of the night contradicted the stories of Allen and Hughley. Specifically, she recalled going to Hughley's residence and seeing Allen there. Also, the next day Hughley asked Barnes if Allen had used a condom and informed her that she and Allen had sexual intercourse. The next day, Allen denied all allegations when he was interviewed.

The game changer occurred on April 27, when counsel for the O'Neil Court employees emailed counsel for Apple-J stating that he now represented Barnes, that Allen had sexual intercourse with Barnes while she was unable to consent, and charges of discrimination would be filed shortly on behalf of Barnes and the others.

On April 28, Moses met separately with Hughley and Allen. Hughley gave Moses a written statement implicating Allen. (Def.Mem., Ex. EE). According to the statement, Allen met Hughley

10

and Barnes after the bowling party and Allen had sexual intercourse with her. Hughley provided cell phone records showing that he and Allen had talked on the night of the bowling party. Hughley confirmed that he told Barnes the next day that Allen had sexual intercourse with her.[6] When Moses met with Allen, he again denied the accusation. Allen was unable to produce phone records.[7] Allen was suspended and terminated shortly thereafter.

Despite the fact that Allen denied the allegation about Barnes, by the time he was suspended and terminated, Barnes had hired an attorney who informed counsel for Apple-J "(t)he matter regarding Sara is serious. She claims Charleston was present at Donny(sic) house and that he took advantage of her sexually when she was not able to consent or defend herself." (Def.Mem., Ex. DD). Even if Hughley's statement implicating Allen was tainted, it merely provided corroboration to the allegation that had been made by Barnes. Further, by the time Allen was terminated, three other female employees had retained the attorney and were proceeding to file administrative charges of discrimination.

Based on these circumstances Apple-J was justified in concluding that Allen had violated its sexual harassment policy. It follows that Allen was not performing his duties to the satisfaction of Apple-J. Therefore, the undersigned finds that Allen has not established a prima facie case of racial discrimination.

      b. Pretext

---

[6] Hughley later claimed that he gave the false statement to Moses because he feared for his job and Moses offered him inducements. (Hughley Dep. Pp. 116-118). At that point he stated that it was he, and not Allen, who had had sexual intercourse with Barnes.

[7] According to Allen he always maintained that he had phone conversations with Hughley after the bowling party. (Allen Dep., p. 138).

Apple-J argues that even if Allen could establish a prima facie case of racial discrimination, it has offered a legitimate, non-discriminatory reason for terminating him, i.e., sexual harassment based on its investigation. Allen argues that Apple-J gave a different explanation for its actions when he was terminated. Allen asserts that he was told he was being terminated for lying about the events following the bowling party. Allen contends that the reason given for his dismissal is that he denied talking to Hughley after the bowling party. He asserts that Moses' notes from the conversation show this was the reason given by Moses at the time of termination. However, review of Moses notes do not support this argument. (Pl.Mem., Ex. H). By the time of the termination, the allegations concerning the bowling party had crystalized and Barnes had retained an attorney. Hughley had corroborated the allegations, but Allen continued to deny them. The position statement given by Apple-J to the South Carolina Human Affairs Commission specifically states that Allen was terminated for engaging "in inappropriate conduct with Sara Barnes following the bowling party on March 29." (Pl.Mem., Ex. E, p. 6).

### 2. Gender Discrimination

Allen does not appear to base his claim on gender discrimination on traditional disparate treatment concepts. Instead, he argues that he was terminated, at least in part, because Apple-J feared that it would be sued by Barnes, a female. Allen cites Ricci v. Destefano, __ U.S. __, 129 S.Ct. 2658 (2009) as authority. In Ricci the Supreme Court held that the City of New Haven violated Title VII when it refused to certify the results of tests used for firefighter promotions upon which minority applicants failed to do as well as non-minority applicants because the City feared being sued by the minority applicants. The Supreme Court held that fears of litigation alone could not justify the City's actions to the detriment of the non-minority applicants.

Allen's theory is not supported by Ricci. Allen has produced no evidence and made no argument that Apple-J terminated him because of his gender. Ricci did not remove the requirement that a disparate treatment plaintiff must prove that an adverse employment action was taken because the plaintiff was a member of a protected group. *See* E.E.O.C. v. GKN Driveline North America, 2010 WL 5093776, *11 (M.D.N.C.).

## Conclusion

Based on a review of the record, it is recommended that Defendant's motion for summary judgment be **granted**.

 Joseph R. McCrorey
 United States Magistrate Judge

Columbia, South Carolina

December 29, 2011